UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
(SOUTHERN DIVISION)

ALBERT YATES and ANN YATES,

      Plaintiffs,

v.

KYLE MILLER LLC, d/b/a RIDGEWOOD
BUILDERS; and KYLE MILLER,
an individual,

      Defendants.

21-      - CK
Hon.

---

Andrew J. Broder (P23051)
Payne, Broder & Fossee, P.C.
Attorney for Plaintiffs
32100 Telegraph Road, Suite 200
Bingham Farms, MI  48025
(248) 642-7733
abroder@ppbf.com

---

## **VERIFIED COMPLAINT**

Plaintiffs, Albert and Ann Yates, by and through their undersigned counsel, state for their Verified Complaint against Defendants, Kyle Miller LLC d/b/a "Ridgewood Builders" and Kyle Miller, individually, as follows:

### **Common Allegations**

1.     Plaintiffs are residents of the State of Colorado.

2.     At all times relevant to this lawsuit, Defendants have resided, or had their principal place of business in, the State of Michigan.  Kyle Miller LLC has its principal place of business at 11008 S. West Bay Shore Drive, Traverse City, Michigan 49684. Kyle Miller, on information and belief, resides in or near Traverse City.

3.     Defendants are actively engaged in the construction business in Grand Traverse County, Michigan, and elsewhere in the State of Michigan.

4.     On information and belief, Kyle Miller is, and always has been, the sole member and chief executive officer of Kyle Miller LLC.

5.     The amount in controversy in this litigation, exclusive of interest and costs, exceeds $75,000.00.

6.     This Court has subject matter jurisdiction over the parties and this dispute pursuant to 28 U. S. Code Section 1332, because diversity of citizenship exists and the amount in controversy exceeds $75,000 exclusive of interest and costs. *See* paragraphs 1, 2, and 5, above.

7.     The claims asserted in this Complaint arise out of Plaintiffs' decision to hire Defendants to perform substantial renovations to home located on real estate owned by Plaintiffs at 6197 Crystal Drive, Beulah, Michigan (the "Property")[1] and Defendants' failure to perform those renovations in a proper and skillful manner.

8.     In December 2019, Plaintiffs purchased the Property, with the intention that it would serve as their Northern Michigan vacation home once substantial renovations were made to it.

9.     After deciding to purchase the Property, Plaintiffs asked Kyle Miller to assess the state of the foundation below the kitchen and provide an estimate of needed repairs to the foundation and the leveling of the kitchen floor. That initial conversation evolved over time into an agreement for a full-blown renovation of the Property. Substantial discussions occurred among Plaintiffs and Kyle Miller, during which Mr. Miller

---

[1] To avoid doubt and repetition, references in this Complaint to the "Property" include the home which was to be renovated.

represented that he had the necessary skill and knowledge to help Plaintiffs to determine what needed to be done to the existing structure of the home to allow for the renovations and improvements desired by Plaintiffs to be made to the home, and Plaintiffs relied on his representations.

10.     Following those discussions and after visits by Kyle Miller to the Property, Plaintiffs hired Defendants to undertake the renovations. No single, discrete written contract was signed by the parties. Instead, the parties' agreement was stated in a series of email communications, including confirming invoices and down payments, among Plaintiffs and Defendants during the period January 7, 2020 – June 14, 2021. *See* Ex. A to this Complaint. Those communications comprise the parties' agreement, under which Defendants were hired to arrange for and oversee substantial renovations to the Property to enable Plaintiffs and their family to be able to live in the home. The communications collected as part of Exhibit A are referred to as the "Contract" throughout the balance of this Complaint.

11.     The Contract required Defendants to oversee substantial demolition of the existing structure and then undertaking improvements to the Property, including (but not limited to) demolition and/or repair of part of the foundation, excavation work, levelling the kitchen, installation of drainage tiles, demolition and replacement of much of the existing second floor and deck, raising of the ceilings in the living room and other rooms, removal of siding, framing and setting of windows and doors, installation of garage doors, replacement of the roof,  and other things.

12.     The Contract (along with the Defendants' invoices) identified Defendants' compensation for providing the above-stated services.

13.     After Defendants were hired, the parties often discussed (both orally and in many email communications) the particular renovations which were to be undertaken, the amenities which would be installed, and the timing of completion of sequential stages of the work and ultimately, completion of the work.

14.     For several months, work progressed in line with the Contract and the parties' frequent discussions, and Plaintiffs periodically paid funds to Defendants while the work was being performed.

15.     The total of the funds which have been paid by Plaintiffs to Defendants is $209,433.

16.     The funds paid by Plaintiffs to Defendants under the Contract were to be used for the Project, and not for any other purposes desired by Defendants.

17.     As work progressed, Plaintiffs continued to talk with Kyle Miller about dates that several key stages of the work would be completed, and when all of the work would be completed so that Plaintiffs could then occupy the home on their Property. Plaintiffs and Kyle Miller reached agreements on those matters, sometimes orally or through their email communications.

18.     However, as the weeks and months passed, Plaintiffs became concerned about Defendants' performance, inasmuch as the deadlines for various stages of the work were not being met. On the occasions when the Plaintiffs reached Kyle Miller, he offered a variety of excuses for his dilatory performance and promised to get back to work and complete the job he was hired to perform. It became clear to Plaintiffs that Kyle Miller's promises were empty ones, and that the construction renovations Defendants were hired to perform were not being completed in a timely manner.

4

19.     Beginning in or around September 2020, Plaintiffs became increasingly worried about Defendants' job performance and missing deadlines. This concern accelerated through Spring of 2021, and in early Summer of that year, Plaintiffs advised Kyle Miller that they were considering changing contractors. Miller promised improvements to be monitored over a 10-day period. However, the improvements did not occur, and Miller began evading Plaintiffs' calls to him seeking information. When Plaintiffs arrived at the Property in early August 2021 (having traveled from their home in Colorado), it became clear that Miller had not been truthful about construction progress, mechanical and electrical inspections, and completion dates. Plaintiffs then lost all trust in Miller and his company and took steps to terminate the Contract.

20.     Plaintiffs made inquiries of Miller, along with several suppliers and other contractors, to determine the true state of the work and Defendants' use of the funds Plaintiffs had paid to Defendants. Plaintiffs learned that the renovations to their Property were not the only services that Defendants were failing to perform in a timely manner. Plaintiffs were told by third-parties that Defendants were having problems with other projects as well and that several subcontractors or material suppliers used by Defendants were not being paid timely.

21.     As a result of their concerns and findings, Plaintiffs began a long and protracted effort to get refunds for work not done and materials not ordered, received, or used but paid for by Plaintiffs. Plaintiffs also requested receipts and proof of payment to suppliers and subcontractors to track timing and use of funds. In response, Kyle Miller offered excuses and multiple reasons why it might take weeks to get receipts and to provide refunds. Since Plaintiffs' funds can only be used for work and materials on the

property, Plaintiffs became concerned that their funds were not immediately refunded. Plaintiffs continued to press Kyle Miller about refunds, receipts, proof of payment, and supplier credits, and more excuses were provided by Miller. Although some refunds and credits were made, Plaintiffs never received a full accounting from Defendants, with receipts showing proof that Defendants had actually used Plaintiffs' funds exclusively for the Property. Plaintiffs also asked Miller on many occasions over several months to repair and complete several visible problems and work deficiencies. Such problems and deficiencies included leaks in the new roof, the failure of the installed drainage system to drain properly, external Tyvek sheeting that had not been secured, and the return of a picture window and sliding glass doors that had been removed from the site. To date, none of those matters has been addressed by Defendants.

22.     Kyle Miller's continued failure to account for what he had done with the funds Plaintiffs had paid to Defendants under the parties' Contract exacerbated Plaintiffs' concerns.

23.     While searching for another contractor to take over the renovations, the first contractor interviewed by Plaintiffs arranged for the Benzie County Building Inspector to visit the Property to assess the work which Defendants had performed.[2]

24.     The Building Inspector advised Plaintiffs that there were significant problems with the work performed by Defendants, that serious structural deficiencies existed, and that those deficiencies needed "to be addressed to bring the building up to code compliance."

---

[2] The home is located in Beulah, Benzie County, Michigan, and that is why  the Benzie County Building Inspector was asked to assess the work.

25.     Plaintiffs were shocked by what the Building Inspector told them. It was now clear to Plaintiffs that Defendants not only had failed to perform their contractual duties timely, but also that the work Defendants had performed was defective and rendered the Property unsafe to occupy.

26.     On the advice of professionals with whom they consulted, Plaintiffs hired a structural engineering firm to assess the condition of the Property.

27.     The structural engineering firm Plaintiffs retained, Wieland Structural Engineering, conducted an analysis of the Property to determine whether it was structurally sound, and then provided a summary of its findings. Wieland's report (Exhibit B to this Complaint) corroborated what the Building Inspector had told Plaintiffs about the Property, and confirmed Plaintiffs' fears about the Defendants' work and the condition of the Property. Weiland's report indicated that the structural integrity of the home is deficient in many significant respects. This list of structural defects identified by Wieland is staggering. Wieland's report recommended that the home be demolished and rebuilt, inasmuch as the entire foundation is defective.

28.     Weiland's report further recommended that any new contractor hired by Plaintiffs (to take over construction at the Property) also undertake an assessment of the condition of the home to determine the most prudent course to pursue.

29.     In line with the Wieland report, Plaintiffs sought the advice of four new contractors whom they interviewed to replace Kyle Miller and his company.  Each of those contractors expressed to Plaintiffs that the most appropriate course for Plaintiffs to follow is to demolish and rebuild their home. None of the contractors interviewed by Plaintiffs, including the contractor ultimately hired by Plaintiffs to replace Defendants, would agree

to complete the project as it currently exists. Rather, the contractors uniformly advised that they would take on the project only if the home were demolished.

30.    Plaintiffs have hired a new contractor to take over construction at the Property.  The existing home will be demolished and new construction will be undertaken.

31.    The above-described actions and inactions of Defendants have resulted in substantial damages to the Plaintiffs, thus necessitating this lawsuit.

32.    MCL 339.2411 (Sec. 2411 of the Occupational Code) prohibits licensees from:

   a.  Failing to account for or remit money coming into the person's possession that belongs to others.

   b.  A willful departure from or disregard of plans or specifications in a material respect and prejudicial to another, without consent of the owner or an authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with the plans and specifications.

   c.  A willful violation of the building laws of this state or of a political subdivision of this state.

   d.  Utilizing workmanship criteria not meeting the standards of the Michigan residential code, as promulgated under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531.

33.    The customs, practices and established standards in the residential construction industry in the State of Michigan dictate that residential construction and/or renovation projects

8

a.  Be performed using high quality materials;

b.  Be in conformity with all applicable codes;

c.  Be consistent with the obligations required of licensed residential builders (according to the Rules of the Michigan Department of Licensing and Regulatory Affairs);

d.  Conform to the plans and specifications shown on the drawings which were used to obtain a building permit for the work;

e.  Be of a quality and skill which is commensurate with a renovation project involving the payment of the substantial funds remitted by Plaintiffs to Defendants;

f.  Be of a quality and skill which is consistent with industry standards for residential construction in southeast Michigan for comparable projects;

g.  Be performed in a "workmanlike" manner.

34.     Defendants violated the above-described obligations under the foregoing customs, standards, laws and contractual terms by performing work on the Property that was deficient, and resulted in numerous defective conditions, including structural defects rendering the home unsafe to occupy. Some examples of the deficient and defective work performed by Defendants include:

- Inadequate or incomplete connection of single-story roof structure at the new second-story wall frame;
- Incorrect header framing and detailing;
- Headers absent where required;
- Inadequate bearing length of framing members;
- Incomplete load path framing (missing transfer posts, load bearing walls, etc.);
- Insufficient stair stringer support at second-floor framing;
- Insufficient stair landing framing connections;

- Unsupported, cantilevered second-floor framing adjacent to stairs;
- Insufficient roof rafter support at the interior fireplace structure;
- Incomplete installation of foundation drain;
- Deteriorated main-floor framing members, support piers and footings;
- Structural issues related to the existing fireplace structure bearing at slab-on grade;
- Insufficient overall building foundation structure;
- Likely inadequate braced wall line capacity and detailing;
- Likely deficient second-story framing members (beams, posts, etc.) at the garage;

The above list constitutes a summary of several of the deficiencies and defects identified by a licensed structural engineer, the Benzie County Building Inspector, and several licensed contractors. The list does not constitute a complete summary of all of the structural deficiencies and defects.

35.    The express and implied representations that Kyle Miller used to induce the Plaintiffs to enter into the Contract, and to continue to remit payments required by the Contract, were largely false and fraudulent.  In fact, significant portions of the Work were not performed in accordance with the representations enumerated in paragraphs 9 and 33, above, were essentially worthless, and now require total replacement by a competent contractor.

## Count I – Breach of Contract

36.    The foregoing allegations are incorporated by reference and restated as if fully set forth here.

37.    Defendants have breached the Contract of the parties.

38.    As a direct and proximate result of their contractual breach, Plaintiffs have incurred substantial economic damages, as well as mental anguish and suffering.

10

WHEREFORE, Plaintiffs request that this Court enter a judgment in their favor and against Defendants in whatever amount in excess of $75,000 which the trier of fact finds them to be entitled, plus costs, interest and attorney fees wrongfully incurred.

### Count II – Fraud

39.     The foregoing allegations are incorporated by reference and restated as if fully set forth here.

40.     The representations made by Kyle Miller to Plaintiffs as to the specific work which needed to be performed, and his ability to perform that work in a skillful, proper and timely manner, were material to the transaction between the parties.

41.     The representations made by Kyle Miller to Plaintiffs were false.

42.     Kyle Miller knew his representations were false at the time they were made.

43.     Kyle Miller made the representations to Plaintiffs with the intent that they rely on them.

44.     Plaintiffs, in fact, relied upon Kyle Miller's representations to their detriment, and they have been damaged thereby.

WHEREFORE, Plaintiffs request that this Court enter a judgment in their favor and against Defendants in whatever amount in excess of $75,000 which the trier of fact finds them to be entitled, plus costs, interest and attorney fees wrongfully incurred.

### Count III – Innocent Misrepresentation

45.     The foregoing allegations are incorporated by reference and restated as if fully set forth here.

46.      The representations made to Plaintiffs by Kyle Miller were false, even if they were innocently made.

11

47.     Plaintiffs relied upon Miller's innocent misrepresentations to their detriment and were damaged thereby.

48.     The losses suffered by the Plaintiffs as a result of Kyle Miller's innocent misrepresentations entitle the Plaintiffs to an award against Defendants.

WHEREFORE, Plaintiffs request that this Court enter a judgment in their favor against Defendants in whatever amount in excess of $75,000 which the trier of fact finds them to be entitled, plus costs, interest and attorney fees wrongfully incurred.

### Count IV – Negligent Misrepresentation

49.     The foregoing allegations are incorporated by reference and restated as if fully set forth herein.

50.      The representations made to Plaintiffs by Kyle Miller were material to the transaction between the parties.

51.     The representations made by Kyle Miller to Plaintiffs were negligently made and were false.

52.     Plaintiffs have been damaged by Defendants' negligent misrepresentations.

WHEREFORE, Plaintiffs request that this Court enter a judgment in their favor and against Defendants in whatever amount in excess of $75,000 which the trier of fact finds them to be entitled, plus costs, interest and attorney fees wrongfully incurred.

### Count V – Michigan Builders' Trust Fund Act

53.     The foregoing allegations are incorporated by reference and restated as if fully set forth here.

54.      Defendants agreed with Plaintiffs that the funds paid by Plaintiffs would be used for, and solely for, the project for which Plaintiffs hired Defendants.

55.     On information and belief, Defendants used funds paid to them by Plaintiffs for several projects in which Defendants were engaged, and not solely for the project as to which Defendants were hired by Plaintiffs

56.     By using the funds for projects other than the project as to which Plaintiffs hired Defendants, the latter violated the provisions of Michigan's Builders' Trust Fund Act (MCLA 570.151) (the "Act"), rendering Defendants liable under the Act.

57.     Plaintiffs have been damaged as a result of the Defendants' violation of the Act.

WHEREFORE, Plaintiffs request that this Court enter a judgment in their favor and against Defendants in whatever amount in excess of $75,000 which the trier of fact finds them to be entitled, plus costs, interest and attorney fees wrongfully incurred.

## Count VI – Declaratory Relief: Piercing The Corporate Veil

58.     The foregoing allegations are incorporated by reference and restated as if fully set forth here.

59.     Defendant Kyle Miller used his limited liability company, Ridgewood Builders, LLC, as a mere instrumentality to commit fraud and to wrongfully harm the Plaintiffs.

60.     Kyle Miller also failed to adequately capitalize his limited liability company, and failed to institute safeguards against the misapplication of funds paid by Plaintiffs to him or to his company.

61.     On information and belief, Kyle Miller is, and at all pertinent times was, the sole member and officer of Ridgewood Builders, and he used it to cause unjust losses to

Plaintiffs. Under the circumstances, Kyle Miller is not entitled to have the benefits of a limited liability company, including insulation from liability.

62.     Accordingly, the corporate veil must be stripped away and Kyle Miller must personally answer for the wrongdoing caused by Ridgewood Builders LLC.

WHEREFORE, Plaintiffs request that this Court enter a judgment in their favor and against Defendants, jointly and severally, in whatever amount in excess of $75,000 which the trier of fact finds them to be entitled, plus costs, interest and attorney fees wrongfully incurred.

### Count VII – Accounting

63.     The foregoing allegations are incorporated by reference and restated as if fully set forth here.

64.     Plaintiffs have requested that Kyle Miller account for the money they have paid to him or to his company, Ridgewood Builders LLC, and they need such accounting to help them establish the extent to which Defendants violated the Act. In response, Defendants have only provided partial, incomplete information.

65.     Based on information they have received from third-party suppliers, Plaintiffs justifiably believe that a significant portion of the funds they have paid to Defendants were not used initially to pay for labor and materials for the project as to which Plaintiffs hired Defendants, even after allowing for a substantial profit on the part of Defendants.

66.     All money paid to a contractor is considered to be in trust for the benefit of subcontractors and suppliers under the Act.

67.    Plaintiffs do not know the full extent to which material suppliers, subcontractors or laborers have not been paid for what they have furnished for the Property. However, the failure to pay them constitutes a violation of the Act.

68.    Apart from whether parties protected by Act were, in fact, paid what they are owed, a legitimate question exists as to whether funds were improperly diverted from the project (as to which Plaintiffs hired Defendants).

69.    Defendants are the only parties who have access to their records which would show how Plaintiffs' money was used.

70.    Plaintiffs ask this Court to exercise its equitable powers to allow Plaintiffs to avoid the additional harm of being denied access to essential records of the Defendants.

WHEREFORE, Plaintiffs request that this Court enter an order that:

A.  Compels Defendants to produce all records that disclose the use and application of the funds paid to Defendants by Plaintiffs;

B.  Compels Defendants to authorize their financial institutions to provide detailed records of their account activities;

C.  Compels Defendants to authorize their bookkeepers and/or accountants to provide information about their finances as necessary to uncover the use and application of the funds paid to Defendants by Plaintiffs;

D.  Enjoins Defendants from secreting and/or dissipating any funds which may be needed to reimburse Plaintiffs for their losses;

E.  Compels Defendants to pay for the cost of the measures describe in this request for relief;

15

F.  Grants any other relief this Court deems appropriate under the

circumstances.

## VERIFICATION

As required by Michigan statute, we, the undersigned, hereby certify and attest to

the accuracy of the facts stated above. Except as otherwise noted, we have personal

knowledge of those facts and we can competently testify as to such facts if called as

witnesses in this proceeding.

_____
ALBERT YATES

_____
ANN YATES

STATE OF MICHIGAN     )
                                          )ss.
COUNTY OF OAKLAND   )


The foregoing Verified Complaint was acknowledged to me by ALBERT YATES and
ANN YATES during a live video session on November _11_, 2021, and after being sworn in
by me, each of them signed the foregoing Verified Complaint during that session (and I
observed them doing so).

_____
Patrina A.M. Reed – Notary Public
Macomb County, Michigan
Acting in Oakland County, Michigan
My Commission Expires: _10/26/2023_

_____
Andrew J. Broder (P23051)
Payne, Broder & Fossee, P.C.
Attorney for Plaintiffs
32100 Telegraph Road, Suite 200
Bingham Farms, MI 48025
November _11_, 2021                            abroder@ppbf.com

16